RIVERS V. OLMSTED ET AL.

McCALL V. RIVERS ET AL.

1. **Appeal to Supreme Court:** APPELLANT WITHOUT INTEREST: APPEAL DISMISSED. Where it appears from the record that one of the appellants has no interest in the controversy, the appeal as to him will be dismissed.

2. ———: TAKEN TOO LATE: APPEAL DISMISSED. Where an appeal is taken more than six months after the date of the orders appealed from, the appeal will be dismissed.

3. **Decree by Default:** IRREGULARITY IN SETTING ASIDE CURED BY SUBSEQUENT HEARING. If it was irregular and illegal to set aside a decree by default against defendant in this case, and to grant a new trial, after the term at which the decree was rendered, and without notice to the plaintiff, yet, since it appears that plaintiff afterwards made and fully argued an elaborate motion to the court to set aside the order vacating the decree and granting a new trial, and the parties and the facts were then all before the court, and the court, being thus advised, refused to vacate the order setting aside the decree, *held* that this was as fair an adjudication of the matter as if plaintiff had been brought into court in the first instance, and that, the adjudication being itself right, he has no ground for complaint in this court.

*Appeal from Polk Circuit Court.*

FRIDAY, APRIL 24.

THESE are actions in equity which involve the rights of the respective parties to certain lands in Dallas county. By a

final decree, rendered after a consolidation of the suits, the title to the lands was declared to be in Hugh D. McCall. John D. Rivers and Louisa Rivers appeal. The facts are stated in the opinion.

*John D. Rivers*, for appellants.

*Parsons & Perry*, for Hugh D. McCall, appellee.

*A. G. Kingsbury*, for National Life Ins. Co., appellee.

ROTHROCK, J.—I. On the first day of September, 1875, John D. Rivers purchased an entire section of land, excepting forty acres, and gave a mortgage for $6,100, bearing 10 per cent interest, payable annually, to secure the whole of the purchase money. On the eighth day of February, 1876, he conveyed the land to H. A. Olmsted, subject to the mortgage, said Olmsted having assumed and agreed to pay the same. The sale to Olmsted embraced a large quantity of other land in Dallas county, and a lot in the city of Des Moines. Olmsted conveyed that part of the land above described to his son, Charles S. Olmsted, and on July 3, 1877, he made a conveyance of the same to H. D. McCall, and placed the same on record. McCall had made a contract with the said Olmsted for the purchase of the land, but what the terms of the same were does not clearly appear.

The contract was not understood alike by the parties, and Olmsted commenced an action against McCall in relation thereto. Rivers intervened in the action, and demanded the appointment of a receiver to take possession of the land and control the same. A receiver was appointed, and the grounds for the appointment were that the notes and mortgage of Rivers were outstanding for the whole of the purchase money, no interest having been paid thereon, and if the payment thereof should be deferred, and the mortgage eventually foreclosed, the proceeds of the sale of the land would be insufficient to pay the mortgage, leaving a balance of the debt as a personal claim

against Rivers. In this action McCall at first repudiated the deed of the land made by Olmsted to him. But afterwards, and on the eighteenth day of June, 1878, McCall paid to Olmsted $1,250 in pursuance of a settlement made between them, and a decree was entered in the action quieting the title of McCall to the land. This decree conferred upon McCall all the right, title and interest which Olmsted acquired by the conveyance from Rivers. McCall paid off the purchase-money mortgage, and interest, and took an assignment thereof to his wife. He was in possession of the land before the receiver was appointed, and for a time held his possession under the receiver. But since the settlement with Olmsted, and the decree quieting his title, he has been in the actual possession of and residing upon the land, and has made valuable improvements thereon.

In January, 1878, Rivers commenced an action in equity in the Polk district court against all the Olmsted family who had any connection with the title to any of the property which he had conveyed to H. A. Olmsted, in which action he claimed that the contract under which he conveyed the real estate to H. A. Olmsted was procured by Olmsted by certain false and fraudulent representations, by which Rivers was damaged in the sum of $25,000. The prayer of his petition was that all of the deeds and conveyances made by Rivers to the defendants in that suit, and by the defendants to each other, be canceled and annulled. He made H. D. McCall a party defendant to the action, and demanded the same relief against him as against the other parties defendant. The original notice in that action was personally served on H. D. McCall on the nineteenth day of January, 1878. A notice of the pendency of the action was filed in the office of the clerk of the district court of Dallas county on the twenty-fourth day of January, 1878. All of the defendants, except McCall, filed their answer in that action on the ninth day of May, 1878. McCall made no appearance. The answer was a full denial of all fraud, and it made full and copious charges

of fraud against Rivers, and demanded a judgment against him for some $27,000, and other relief. That cause was continued from term to term, until July 15, 1881, when it was transferred to the circuit court of Polk county. H. D. McCall having made no appearance to the action, the transfer was made without his knowledge, and without any motion filed for that purpose. The ground of the transfer, as recited in the transcript, was that Hon. WILLIAM H. McHENRY, then judge of the district court, had been counsel in the case.

On the twenty-ninth of November, 1881, Rivers filed an amendment to his petition, setting forth that after the beginning of the action Charles S. Olmsted had conveyed part of the land to James G. Olmsted, and placed the same on record without the knowledge of James G. Olmsted, and that the same should be canceled of record, and that the said James G. Olmsted, H. A. Olmsted and Fannie S. Olmsted had conveyed their interest in the property in controversy to Robert James, and that it was necessary that he should be made a party defendant. On the same day the answer of Robert James was filed, in which he admitted the allegations of the petition and amendment thereto, and consented to judgment and decree as prayed. It is somewhere stated in the record that this answer was prepared and filed by Rivers, and we do not understand that this fact is disputed. The answer was signed by James in person. On the next day Rivers dismissed the action " as against defendant Olmsted," and took leave to make James a party.

On the twenty-fourth day of December, 1881, Rivers procured a default to be entered up against McCall, and on the same day he caused a decree to be entered canceling the deed made by himself to H. A. Olmsted, and all deeds subsequently made by all of the defendants, and reinvesting the title to all of the property in himself. McCall had no knowledge of the transfer of the cause from the district court, and no knowledge of the default and decree against him, until March, 1882, when he at once filed in the circuit court a

petition for a new trial and a motion to set aside his default. At the same time he filed an independent petition against Rivers, in which he prayed that the decree be set aside and annulled, and that his title to the land be quieted. On the same day the court made an order setting aside the decree rendered on the twenty-fourth day of December, 1881, and ordering that the cause stand for trial anew on the first day of the next term, and that McCall give to Rivers ten days notice of the time and place of trial. The notice was duly 'served, and at the same time notice of the pendency of the independant action of *McCall v. Rivers* was served. Rivers made a motion to set aside the order vacating his decree and granting a new trial. It is claimed that this order was overruled, but whether it was or not is not a material question. On the fifteenth day of January, 1883, he filed a substituted motion asking the same relief. It is not necessary to set out this motion. It is quite voluminous, and is in the nature of an argument upon the question as to the power of the court over defaults. The motion was overruled on the sixteenth day of February, 1883, and the court ordered that the original action and the case of *McCall v. Rivers* be consolidated and tried together. Thereupon McCall filed an answer, in which he took issue with the averments of the original petition. On the fifteenth day of January Rivers filed an answer in the independent action of McCall against him. This answer sets out at great length the claims of Rivers to the land in question. It exhibits the pleadings in the suit between Olmsted and McCall in Dallas county, in which Rivers intervened, and many other matters not necessary to refer to here.

To this answer McCall filed a very voluminous reply, and upon these pleadings, the said actions being consolidated, the cause was tried to the court. The plaintiff Rivers introduced no evidence. There was a decree dismissing the original petition, and in the independent action of *McCall v. Rivers* there was a decree quieting the title to the land in McCall, and canceling a certain conveyance of the land made by one Joseph Rivers

to Louisa Rivers on the fourth day of March, 1882. It should, perhaps, be stated here that McCall made Louisa. Rivers a party defendant, to his independent action. She filed an answer. McCall subpœnaed her to attend the trial as a witness, and she failed to attend. She has no real interest in the controversy, as appears by an affidavit of John D. Rivers,

1. APPEAL to supreme court: appellant: without interest: appeal dismissed.

filed in resistance to a motion to dismiss the appeal. She made no appearance in person in this court, nor by attorney, excepting by John D. Rivers, and we are authorized in accepting his affidavit that she has no real interest in the subject-matter of the suit. This is all that is required to be said as to her appeal.

II. After the default against McCall was taken and the decree entered, the National Life Insurance Company put in an appearance in the action. It was the holder

2. ——: taken too late: appeal dismissed.

of a mortgage on some of the property other than that held by McCall. The mortgage was foreclosed, and the insurance company became the owner under the decree and sale in foreclosure. Certain orders were made by the court in behalf of the insurance company. Rivers appealed from the whole case. But all the orders in which the insurance company was a party were made more than six months before the appeal was taken. These orders were entirely independent of the controversy between McCall and Rivers, and an appeal should have been taken within six months from the time the last order was made. Nothing further need be said about this branch of the case.

III. We come now to the controversy between John D. Rivers and McCall; and we desire to say, in entering upon the consideration of this part of the case, that we have not stated all of the facts contained in the pleadings. To do so would involve very great labor. There was no agreed abstract, and we have been compelled to resort to the transcript; and even the transcript is not complete, and we may not be entirely accurate in stating the dates of some of the trans-

actions above recited.    But if there are any inaccuracies they are not material to the questions involved.

The appellant insists that the default and decree against McCall were illegally set aside and canceled.    It is true that

**3. DECREE by default: irregularity in setting aside cured by subsequent hearing.** the decree was vacated, and a new trial granted after the term, and without notice to Rivers. But we do not regard this as decisive of the rights of the parties.    At some time Rivers made a motion to vacate this order, which motion was overruled.    The grounds of this motion are not shown, because it is not in the transcript.    But on the fifteenth day of January, 1883, Rivers filed and presented to the court a very elaborate substituted and amended motion to vacate the order setting aside the decree and granting a new trial.    The cause was then fully presented.    The court had before it the sworn petition of McCall asking for a new trial, and that he be permitted to defend.    The parties were then before the court, and Rivers urged the sanctity of his default in every conceivable manner in his motion.    The court with all this before it refused to vacate the order previously made.    This was equivalent to an adjudication that McCall was entitled to be heard in his defense, and was as fair an adjudication as if Rivers had been brought into court by notice in the first instance.

As to the rightfulness of this adjudication there can be no doubt.    The original decree was a fraud upon its face.    It reinvested Rivers with the full title to all the property, except-ing the liens of the mortgages, without any return of the consideration he had received for his conveyance.    The con-nection of James with the title was, to say the least, exceed-ingly suspicious.    The connection between Rivers and McCall in the litigation with Olmsted in Dallas county, the transfer of the case from the district to the circuit court without the knowledge of McCall, and allowing the action to remain upon the docket for three years without a default against McCall,—these, and other admitted facts in the case, fully substantiated the claim of McCall that he never in fact knew that an original

notice was served upon him, but supposed when he settled the litigation in Dallas county that his title was perfect. A person may, as a party to an action, be excused for claiming that such a default and decree should not be disturbed, but to a chancellor, sitting as the judge of the circuit court in an equitable action, it properly appeared as an attempt to pervert the course of justice by securing an unconscionable advantage.

This is about all that is necessary to be said in this case. Rivers did not stand upon the adjudication against him setting aside his decree. McCall, as he had the right to do, aswered his petition, and the cause came on for trial. The burden was on Rivers to prove the averments of his petition. He introduced no evidence, and the circuit court very properly dismissed the petition, and that was the end of the case as to John D. Rivers; and as Louisa Rivers had no interest in the controversy, the decree, in accordance with the prayer of the independent petition of McCall, quieting the title to the land in him, was properly entered.

AFFIRMED.